# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| LONNIE DICKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-2868-STA |
| | ) | |
| INTERSTATE BRANDS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

___

# ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
___

Before the Court is Defendant's Motion for Summary Judgment (D.E. # 28) filed on March 31, 2008. Plaintiff responded in opposition to the Motion (D.E. # 29) on May 7, 2008, and Defendant has filed a reply (D.E. # 33). Trial was set in this matter for August 11, 2008. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Lonnie Dickens ("Plaintiff") was hired as a bread production worker at Defendant Interstate Brands Corporation's ("Defendant") Memphis bakery in 1996. On July 13, 2005, Defendant terminated Plaintiff's employment for theft of company property. Plaintiff's termination stems from a July 8, 2005-incident where Plaintiff and other sanitation department employees assisted Safety Manager Tara McLeane ("McLeane") in unloading safety awards from a truck trailer. In return McLeane provided Plaintiff and others with lunch including cold drinks stored in company-owned coolers. According to Plaintiff, he believed that McLeane was

1

giving each employee a cooler in exchange for their assistance, so he and another employee Andrew Broome ("Broome") took two coolers and placed one in each of their vehicles. When another employee noticed that the coolers were missing, McLeane questioned Plaintiff and the other sanitation employees about the coolers' whereabouts. At that point Plaintiff told McLeane that he was under the impression that she had given the employees the coolers for their own. McLeane responded that the coolers were not intended for the employees and then retrieved the coolers from the vehicles of Plaintiff and Broome. McLeane reported the incident to Human Resources Assistant Manager Jason Brandt ("Brandt"), whereupon Plaintiff and Broome were suspended pending an investigation. Brandt obtained written statements from several employees who were present at the time of the incident. None reported that McLeane had told Plaintiff and Broome that they could take the coolers. Following the investigation, Plaintiff was terminated on July 13, 2005, per Defendant's policy for theft of company property.

As a covered employee under the Bakery Confectionary Tobacco Workers & Grain Millers, Local 149, collective bargaining agreement ("CBA"), Plaintiff filed a grievance the day after his dismissal. The Union declined to pursue Plaintiff's grievance based on its investigation of the merits. At that point Plaintiff filed a charge against the Union with the National Labor Relations Board ("NLRB") which was dismissed.[1] On October 25, 2005, Dickens then filed an EEOC charge against Defendant alleging that his termination was discrimination on the basis of race and that he was retaliated against because he filed a complaint against his "black female

---

[1] The NLRB's decision to dismiss was upheld on appeal to the NLRB Office of Appeals.

supervisor for riding me."[2]

Plaintiff alleges that Defendant discriminated against him on the basis of his sex (male) and race (African-American) and retaliated against him because of a complaint he had made about a co-worker. In support of Plaintiff's allegation of race discrimination, Plaintiff cites examples where similarly-situated employees were not terminated for similar conduct. For instance, there was a 2004 investigation of allegations that Plaintiff was stealing time by making a false time-clock punch. Human resources determined that no disciplinary action should be taken against Plaintiff. According to Plaintiff, his supervisor at that time, Jerry Archer who is white, had clocked Plaintiff in and out. Plaintiff claims that he made a written report to Human Resources about his suspicions, but no action was ever taken against Archer. However, there is no evidence of such a report.[3] Furthermore, Plaintiff alleges that Jim Gatlin, a white route sales representative, was caught stealing money but never terminated. Plaintiff offers no proof of this incident, and Defendant has no record of it.[4] Additionally, route sales personnel are under a separate union contract and separate management.

---

[2] It appears that on July 1, 2005, just one week before the incident giving rise to his dismissal, Plaintiff submitted a note to human resources complaining that a shift leader Laverne Harris had made threats to him. However, according to Defendant, Harris had no authority to discipline Plaintiff and was in no way involved in Plaintiff's termination.

[3] Although the incident is not offered as an example of a similarly situated employee, Plaintiff alleges that in 2004, after inquiring about a position in the maintenance department, Jerry Tindall, who is white, informed him that "you'll have to be white" in order to work in maintenance. Defendant counters that maintenance positions are covered under the CBA and posted for bid and based on seniority. Furthermore, at the time of Tindall's alleged remark, there were African-Americans working in the maintenance department. Plaintiff claims that he made a written report to Human Resources, but there is again no evidence of such a report. Tindall had no involvement in Plaintiff's termination.

[4] Defendant does report the termination of a white sales representative in January 2006, several months after Plaintiff's dismissal, for the theft of soft drinks.

Subsequently, Plaintiff amended his EEOC charge to include an allegation of sex discrimination citing an incident where two female employees were disciplined for fighting. One was terminated and the other was offered her job back. In his Complaint, Plaintiff contends that he was similarly situated to the female employee who was offered her job back in this separate incident, but unlike her he was not given the opportunity to be reinstated after his violation of company policy. Defendant points out that the fight was a totally separate situation: the female employee held a different position and reported to another supervisor. Therefore, the two were not similarly situated.

In its Motion for Summary Judgment, Defendant contends that Plaintiff cannot make out a prima facie case for sex and race discrimination. Defendant argues that because there is no direct evidence of discrimination, the four-part burden-shifting framework from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) would apply. In particular, Plaintiff must demonstrate that similarly situated employees not in the protected class were treated more favorably. According to Defendant, its Memphis bakery employs more males than females; therefore, Plaintiff would actually have to make the unusual showing of reverse discrimination with regard to his claim of sex discrimination. Defendant also points out that its investigation was conducted by Brandt who is a white male and that Plaintiff's position was filled by an African-American male. Plaintiff's union grievance was rejected by Union Business Manager Joseph Addison, an African-American male. Additionally, Plaintiff cannot prove that similarly situated female employees were treated differently. Defendant argues that in order for one employee to be similarly situated to a plaintiff, both must have dealt with the same supervisors, have been subject to the same standards, and have engaged in the same prohibited conduct

4

without differentiating circumstances. The incident cited by Plaintiff did not involve the same conduct (here theft of company property) for which Plaintiff was dismissed. Plaintiff has admitted that one of the female employees was actually terminated for fighting.

As for the claim of racial discrimination, Defendant argues that Plaintiff cannot point to any similarly situated white employees who received different treatment on account of race. In fact, Defendant has produced evidence of the termination of a white employee one month before Plaintiff's termination for the same violation, theft of company property. Defendant further claims that the time-clock incident involving Plaintiff's white supervisor and his anecdote concerning Jim Gatlin, the route salesperson, do not meet the test for similarly situated employees and are based on unsupported hearsay.

Nor can Plaintiff show that Defendant's decision to terminate was pretextual. Defendant contends that even if it had incorrectly concluded that Plaintiff had violated company policy or if there was a difference of opinion as to whether Plaintiff had engaged in theft, neither could go to prove that Defendant's dismissal of Plaintiff was pretext for discrimination. Plaintiff has no evidence that Defendant did not "honestly believe" in its proffered non-discriminatory reason for its decision to terminate Plaintiff. In the end Plaintiff's allegations "amount to unsupported speculation."

As for Plaintiff's claims of retaliation, Defendant argues that Plaintiff must show that any alleged retaliation occurred as the result of "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation,

proceeding or hearing under Title VII."[5] Plaintiff alleges that Defendant retaliated against him because of the complaint he made against Laverne Harris for her "nagging" him. Defendant asserts that this is not protected activity for purposes of making out his prima facie case for retaliation. Furthermore, Plaintiff cannot establish a causal connection between his complaint against Harris and his termination other than the fact that the two incidents happened approximately two weeks apart. Harris also had no role in reaching the decision that Plaintiff should be dismissed.

In his very brief Response in opposition, Plaintiff states that even under the *McDonnell-Douglas* framework, there is sufficient circumstantial evidence from which a jury could draw an inference of discriminatory motive. Citing the examples of Archer and Gatlin, Plaintiff contends that he can prove that similarly situated employees received different treatment on account of their race or sex. Plaintiff concludes by simply stating that there are genuine issues of material fact present in the case which preclude summary judgment for Defendant.

In its Reply to Plaintiff, Defendant states that the Court should not consider Plaintiff's response due to the fact that Plaintiff did not respond within the thirty days allowed by Local Rule 7.2(a)(2). In any event, Defendant claims that Plaintiff has only made cursory assertions in his Response and cited no material facts which would preclude summary judgment. None of the evidence Plaintiff recounts in his Statement of Material Facts constitutes evidence of discrimination, and some of the events are inadmissible hearsay. Defendant goes further and argues that Plaintiff's claims are even contradictory. For instance, his argument concerning the

---

[5] D.'s Mot. Summ. J., 8 (citing *Jones v. City of Jackson*, 335 F.Supp. 865, 870-71 (W.D. Tenn. 2003).

reinstatement of the female employ to prove his claim of sex discrimination undercuts his claim of racial discrimination because the reinstated female employee is African-American. Additionally, Plaintiff has failed to address the fact that Defendant dismissed a white male employee for theft of company property one month before Plaintiff's termination. Finally, Plaintiff did not address Defendant's arguments against his claim of retaliation at all.

## **SUMMARY JUDGMENT**

Rule 56 (c) provides that

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.[6]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.[7] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[8] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[9] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[6] Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Celotex*, 477 U.S. at 324.

[9] *Matsushita*, 475 U.S. at 586.

verdict.[10] It is improper for the Court to "make credibility determinations or weigh the evidence" at the summary judgment stage.[11] Nevertheless, in this Circuit, a motion for summary judgment "requires the nonmoving party to 'put up or shut up' [on] the critical issues of [the] asserted causes of action."[12] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[13]

Furthermore, Local Rule 7.2(a)(2) requires that a party file its response to a Motion for Summary Judgment within thirty days. By the Court's reckoning, Plaintiff's Response in this matter was due on Monday, May 5, 2008, giving Plaintiff the benefit of the three additional days allowed by Fed. R. Civ. P. 6(d) and the other provisions for computation of time under Rule 6. As a result, Plaintiff's Response filed on May 7, 2008 was untimely. However, in light of the fact that the Motion before the Court would be dispositive of the case, the Court will consider the Response despite its untimeliness.

## ANALYSIS

### A. Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of

---

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[12] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[13] *Celotex*, 477 U.S. at 322.

employment, because of such individual's race, color, religion, sex, or national origin."[14] In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must prove four elements: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment decision; and (4) that he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.[15] If the plaintiff makes his prima facie case, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.[16] If the employer meets this burden, the plaintiff must show by a preponderance of the evidence that the reasons offered by the employer were actually a pretext for discrimination.[17] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[18]

It is undisputed that Plaintiff is a member of a protected class, that he was qualified for his job, and that he suffered an adverse employment decision. Therefore, Plaintiff must show either that he was replaced by a person outside his protected class or treated differently than similarly situated non-protected employees. Plaintiff was replaced in his position by another African-American male, and so Plaintiff must show that he was treated differently than a similarly situated employee. The Court holds that as a matter of law Plaintiff has failed to make this showing.

---

[14] 42 U.S.C. § 2000e-2(a)(1) (2008).

[15] *Di Carlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

[16] *Tex. Dep't of Cmty Affaris v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[17] *McDonnell Douglass*, 411 U.S. at 804.

[18] *Burdine*, 450 U.S. at 253 (citing *Bd. of Tr. of Keene State Coll. v. Sweeny*, 439 U.S. 24, 25 n. 2 (1978)).

Plaintiff has alleged that Defendant discriminated against him on the basis of his sex and his race and cited several instances to prove that similarly-situated employees received different treatment. However, the two employees must be similarly-situated in all relevant aspects of their respective employment circumstances.[19] In a case like the one at bar involving disciplinary action, the plaintiff must show that all relevant aspects of his employment situation are "nearly identical" to those of the comparison employee whom he alleges was treated more favorably.[20] More specifically, the comparison employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[21] These factors generally are *all* relevant considerations in cases alleging differential disciplinary action.[22]

In attempting to make his prima facie case for sex discrimination, Plaintiff cites the incident involving two female employees at Defendant's Memphis bakery where one employee was terminated while the other was reinstated. Even when viewing the evidence in the light most favorable to Plaintiff, the Court is not persuaded that as a matter of law, Plaintiff was similarly situated to the female employee who was given back her position. The record before the Court indicates that the fight was a totally separate situation occurring some months after Plaintiff's dismissal.[23] Plaintiff has produced no evidence that the female employee held a

---

[19] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (quoting *Ruth v. Children's Med. Cent.*, 1991 U.S. App. LEXIS 19062, at *22 (6th Cir. Aug. 8, 1991)).

[20] *Pierce*, 40 F.3d at 802.

[21] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

[22] *Ercegovich*, 154 F.3d at 352 (6th Cir. 1998) (citing *Pierce*).

[23] Ex. B to Mot. Summ. J., Decl. of Jason Brandt ¶ 14.

nearly identical position or even reported to the same supervisor.[24] Perhaps most importantly, Plaintiff was discharged for theft of company property; whereas, the female employee was reinstated following a physical altercation with a co-worker. One can hardly say that Plaintiff and the female employee were similarly situated in all relevant aspects. This is the only example of a similarly-situated female employee Plaintiff has cited in support of his claim for sex discrimination.[25] Therefore, Plaintiff has failed as a matter of law to make out his prima facie case for sex discrimination, and Defendant must be granted summary judgment as to this allegation.

For similar reasons Plaintiff's claim for discrimination on the basis of race also fails as a matter of law. Plaintiff cannot cite an instance where a similarly situated employee of a different race was treated differently than he was in this case. In his claim for racial discrimination, Plaintiff contends that two white employees, Jerry Archer and Jim Gatlin, were involved in or accused of theft of company property but never terminated. Unfortunately, these examples are not persuasive. There is nothing in the record before the Court from which a reasonable juror could find that either Archer or Gatlin was similarly situated to Plaintiff. As an initial matter, Plaintiff has only his own allegations about Archer and Gatlin as evidence that these incidents ever occurred. Defendant has no independent documentary evidence to corroborate that Archer or Gatlin were ever found to have engaged in theft of company property. Plaintiff claims that he reported his suspicions about Archer clocking him in and out to Human Resources, but neither Plaintiff nor Defendant has any record of such a report. Likewise, with respect to Gatlin, there is

---

[24] In fact, Plaintiff has stated that he and the female employee worked in different departments and under different supervision. Pl. Depo. 166, Mar. 2, 2008.

[25] It appears that during his deposition Plaintiff relates a story about Laverne Harris bringing a gun to work and threatening another employee some time during the 1990s; however, Plaintiff has no evidence of this incident, and Defendant could find no report of it. Even assuming *arguendo* that this happened, Plaintiff has failed to show how that episode meets the similarly-situated requirement of *McDonnel Douglas*.

no evidence in the record other than Plaintiff's own hearsay offered during his deposition that Gatlin ever stole company property and escaped any discipline. Even if the incidents had occurred as Plaintiff reports, the fact remains that neither Archer nor Gatlin is similarly situated as a matter of law. Although both men are white, neither held a position with Defendant which is nearly identical to the position Plaintiff held. Archer was employed as a supervisor and Gatlin as a route sales representative. Plaintiff was hired as a bread production worker and at the time of his termination was working in sanitation. On this basis alone, Plaintiff has failed to carry his burden. Therefore, Plaintiff's claim for discrimination on the basis of race must fail as a matter of law, and so summary judgment as to this allegation must be granted to Defendant.

## B. Retaliation

Defendant also seeks summary judgment as to Plaintiff's claim for retaliation. Plaintiff alleges that Defendant discriminated against him in retaliation for his filing a complaint with Human Resources against a co-worker, Laverne Harris, one week before the event giving rise to Plaintiff's termination. In order to establish a prima facie case of unlawful retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence (1) that he engaged in a protected activity; (2) that the defendant knew of the protected activity; (3) that the defendant then took an adverse employment action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse employment action.[26]

The Court holds that Plaintiff cannot make the first showing required for his prima facie case of retaliation, that is, that he engaged in protected activity. "Protected activities" have been defined to include making an EEOC charge or testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.[27] The Sixth Circuit has construed the

---

[26] *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

[27] *Jones v. City of Jackson*, 335 F.Supp.2d 865, 870-71 (W.D.Tenn. 2003) (citing *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir.2003), *reh'g and reh'g en banc*

similar retaliation provisions of the ADEA in light of Title VII. [28] In the context of the ADEA, the Sixth Circuit has held that in order to receive protection, a plaintiff's activity "must concern a violation of" the Act in question.[29] Here, Plaintiff's complaint against Harris reads as follows:

> I Lonnie Dickens would like to express concern about Lavern (sic) Harris. She has been talking out in a threatening way towards me. I would like for someone to speak with her about it. Can't work under these conditions. Lonnie Dickens, 7-1-05.[30]

While Plaintiff certainly had the right to make a complaint to Human Resources, the complaint in and of itself contains no allegations of improper discrimination nor opposition to any unlawful employment practice covered under Title VII. Indeed Plaintiff admitted during his deposition that he did not believe Harris to be discriminating against him.

Assuming *arguendo* that Plaintiff had other proof that his complaint against Harris constituted protected activity, Plaintiff still has cited no evidence to meet the fourth part of his prima facie case, that there is a causal connection between the protected activity and the adverse employment action. It appears that Plaintiff believes his dismissal was related to his complaint due to their temporal proximity. However, that factor alone is insufficient to establish a causal connection.[31] On the contrary, Defendant has cited evidence that Harris had no part in the cooler incident, in the investigation of Plaintiff's alleged theft of company property, nor in the decision to terminate Plaintiff. In short, Plaintiff has failed to cite specific facts showing that there is a

---

*denied* (Sept. 30, 2003)).

[28] *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007)

[29] *Id.* (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir.1989) (holding that employee's allegation that manager was racist is not protected activity under ADEA because "the allegation is not that [the employer] is engaging in unlawful employment practice, but that one of its employees has a racial intolerance" and that charge of "ethnocism" is too vague to constitute opposition to unlawful practice)).

[30] Ex. 12 to Pl.'s Depo., Mar. 2, 2008.

[31] *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).

genuine issue for trial.  As a matter of law, Plaintiff has not met his burden to state a claim for retaliation, and so summary judgment as to this allegation must be granted to Defendant.

## CONCLUSION

The Court holds that Plaintiff has not met his burden to establish a prima facie case for his claims of discrimination on the basis of sex or race nor for his claim of retaliation.  Defendant is entitled to summary judgment as a matter of law.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

    **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 25th, 2008.